UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARLOS A. ALVAREZ, JR.,<br>　　　*Plaintiff*,<br><br>v.<br><br>CITY OF WORCESTER and CAPTAIN<br>MICHAEL A. MCKIERNAN,<br>　　　*Defendants*. | Civil Action No. _____ |

## <u>COMPLAINT AND JURY DEMAND</u>

### <u>INTRODUCTION</u>

1.　　　This is a civil rights action for damages. The Plaintiff alleges that an officer of the Worcester Police Department, acting pursuant to customs, policies and practices of the City of Worcester and its police department, unlawfully searched his cellular phone by opening the phone and reading at least one text message from it. The officer sought criminal charges against the Plaintiff and submitted an application for criminal complaint citing the presence of the text message as evidence of the Plaintiff's involvement in drug distribution. The officer wrote in his application that he read the text message from the phone's outer screen but did not open the phone or press buttons. The officer's statement about the text message was demonstrably false because the seized phone is incapable of displaying text messages on its outer screen. The officer deliberately repeated this falsehood throughout the course of the criminal proceedings against the Plaintiff. The officer falsely testified on three occasions: at the Grand Jury proceedings, at an evidentiary hearing on the Plaintiff's motion to suppress and at the Plaintiff's trial. As a direct and proximate result of the officer's conduct in the criminal proceedings, and the customs and

practices of the City of Worcester and its police department, Plaintiff was wrongfully convicted and imprisoned for approximately three years.

## PARTIES

2.    Plaintiff Carlos A. Alvarez, Jr. ("Alvarez") is a resident of Worcester, Worcester County, Massachusetts.

3.    Defendant City of Worcester (the "City") is a duly chartered municipal corporation of the Commonwealth of Massachusetts with a place of business located at 455 Main Street, Worcester, Worcester County, Massachusetts.

4.    Defendant Michael McKiernan ("McKiernan") was at all pertinent times a duly appointed and sworn police officer employed by the City. Upon information and belief, McKiernan resides at 96 General Hobbs Road, Holden, Worcester County, Massachusetts.

5.    McKiernan is being sued in his personal capacity for conduct done under the color of law in the course of his employment as a sworn police officer of the City.

## JURISDICTION

6.    Alvarez brings this action pursuant to the Massachusetts Civil Rights statute, common law of tort, the Massachusetts Declaration of Rights and under 42 U.S.C. § 1983 for violation of rights under the Fourth and Fourteenth Amendment of the United States Constitution.

7.    Title 28 U.S.C. § 1331 and 1334 provide federal question jurisdiction over the federal claims. Title 28 U.S.C. § 1367 provides supplemental jurisdiction over the state law claims.

FACTS

Alvarez's Arrest & the Criminal Proceedings

8.      McKiernan was employed by the Worcester Police Department on January 12, 2014.

9.      On January 12, 2014, McKiernan was on duty in the City in a marked police cruiser.

10.     At approximately 12:15 p.m. on January 12, 2014, McKiernan was parked in the parking lot shared by Compare Foods and the Odd Fellows Home on Main Street in the downtown area of the City.

11.     McKiernan observed a vehicle occupied by Ms. Suarez ("Suarez"), a woman with whom he had previous interactions and Jonathan Gomez ("Gomez"), a homeless man who frequented the area.

12.     McKiernan placed Suarez and Gomez under surveillance and followed them. The vehicle left the parking lot and travelled a short distance to the Fortuna Market. Gomez exited the vehicle, went into the store and returned to the vehicle.

13.     The vehicle then returned to the parking lot shared by the Compare Foods supermarket and the Odd Fellows residence and parked in the Odd Fellows portion of the parking lot. After parking, Gomez and Suarez exited the vehicle. Gomez walked toward the building while Suarez stood near the vehicle.

14.     Gomez then approached Alvarez, who had entered the parking lot from the Main Street entrance.

15.     Apparently believing that Gomez and Alvarez were about to engage in a drug transaction, McKiernan parked his cruiser and walked toward Gomez and Alvarez.

16.     McKiernan questioned Gomez and Alvarez.

17.     At one point during the questioning, Alvarez ran away from McKiernan.

18.     McKiernan chased after Alvarez but fell down.

19.     Worcester Police Officer Joseph Tolson ("Tolson"), who was responding to McKiernan's call for back-up, intercepted and tackled Alvarez several hundred yards from the Compare Foods parking lot.

20.     Tolson struck Alvarez in the leg with a hard object - possibly a baton or a flashlight.

21.     After Alvarez was handcuffed, Tolson and McKiernan then lifted him off the ground and moved him into a seated position.

22.     McKiernan alleged that, as he and Tolson were lifting Alvarez off the ground, he observed a "plastic bag with a small white object in it" fall out of the left-hand side of Alvarez's pants.

23.     Tolson testified that he did not observe anything fall out of Alvarez's pants and did not see any narcotics that day.

24.     McKiernan recovered one hundred and thirty dollars ($130.00) in cash from Alvarez.

25.     McKiernan also recovered a Boost Mobile, Kyocera Coast (Model No. 2151) cellular phone (the "Phone") from Alvarez.

26.     According to McKiernan, at some point after Alvarez's arrest, the Phone rang multiple times and he observed a text message "pop up" on the outer screen of the Phone.

27.     According to McKiernan, the message was from "Anna Fri" and the message said "Nigga I need some shit."

28. After his arrest, Alvarez was transported to the hospital to be treated for the leg injury he sustained during the arrest.

29. On January 12, 2014, McKiernan prepared and submitted a Statement of Facts in Support of an Application for Criminal Complaint. McKiernan wrote the following regarding Alvarez's cell phone:

> While completing this report at the police station, Alvarez cell phone rang many times. I did not answer it but I saw a message from "Anna Fri" pop up on the screen which said "Nigga I need some shit". This is common language to purchase illegal drugs. I did not access the cell phone and I do not know what the number is. Based on Alvarez's behavior, the denominations and location of his money, the recovered drugs and the message on his phone, Alvarez is being charged with Unlawful Possession of a Class B substance (Crack Cocaine) with Intent to Distribute, Resisting Arrest, and Trespassing. The drugs and monies will be sent to the Vice Squad for processing. I will retain possession of the cell phone at this time.

30. On January 13, 2014, Alvarez was charged in the Worcester District Court with Possession with intent to distribute class B drug, Resisting arrest and Trespassing.

31. On January 23, 2015, McKiernan testified before the Worcester County Grand Jury. He gave the following testimony regarding Alvarez's cell phone:

> One of the items taken was his cell phone recovered from him. And as I was doing the report, the cell phone continued to ring. And one of the messages that popped up on the screen from a screen name of Anna FRI - - we don't know who that person is - - the message was, Nigga, I need some shit. I did not go any further into the phone. I did not follow up or any of that, but that is a message pretty common to a person who is asking to buy narcotics.

32. On January 26, 2015, Alvarez was indicted in the Worcester Superior Court on one count of distribution of a class A drug, subsequent offense (Count 1; G.L. c. 94C, § 32(b)), two counts of distribution of cocaine, subsequent offense (Counts 2 and 3; G.L. c. 94C, § 32A), two counts of drug violation near a school zone (Counts 4 and 5; G.L. c. 94C, § 32J), one count of trespassing (Count 6; G.L. c. 266, § 120) and one count of resisting arrest (Count 7; G.L. c. 268, § 32B).

33.     On January 7, 2016, the Superior Court (Frison, J.) dismissed <u>Counts 1, 3, 4</u> and <u>5</u> by agreement.

34.     Alvarez filed a pretrial motion to suppress on October 28, 2015. An evidentiary hearing was held on March 3, 2016 before the Honorable Raffi N. Yessayan.

35.     Among other things, Alvarez alleged that the text message should be suppressed because McKiernan conducted an illegal search and seizure by reading the text messages on the Phone.

36.     The search incident to arrest exception to the search warrant requirement does not apply to cell phones. As a matter of law, if McKiernan opened or manipulated the Phone to read the text messages, the law required that the content of the text message be suppressed as an unconstitutional search and seizure absent some other exception to the search warrant requirement.

37.     On March 3, 2016, McKiernan testified at the hearing on Alvarez's motion to suppress. McKiernan gave the following testimony on direct examination:

Q:     What else did you recover from him, if you recall?
A:     A cell phone.
Q:     Now, in regards to the cellphone, did you attempt to open it or look into it at any time?
A:     No.
Q:     Did you see any messages or anything come up while it was in your custody?
A:     Yes.
Q:     Did you have to open the phone in any way to see that message?
A:     No.

38.     On cross-examination at the hearing on Alvarez's motion to suppress, McKiernan gave the following testimony:

Q:     Okay. Now the cellphone, that was a flip phone?
A:     No. I don't believe so. I don't remember off the top of my head, but - -
Q:     Do you have a copy - - do you have it with you?
A:     No, I don't.

Q:      So it could have been a flip phone, but you're not sure?
A:      I don't know.
Q:      In any event, you looked at the phone as it rang at the police station?
A:      And you read some messages from the phone?
Q:      Yes.

39.     On June 24, 2016, the Court (Yessayan, J.) issued Findings of Fact, Rulings of

Law and Order on Defendant's Motion to Suppress. Alvarez's Motion to Suppress was denied.

The Court wrote:

> Any information observed on the defendant's phone is also admissible as Lt.
> McKiernan did not flip open or answer the phone, he simply observed
> information on a lawfully seized phone.

40.     The case proceeded to a jury trial on January 9, 2017 before the Honorable Daniel

M. Wrenn.

41.     On January 9, 2017, McKiernan gave the following testimony at Alvarez's trial

on direct examination regarding the cell phone:

Q:      Now, you indicated that you found this Kyocera phone. What type of phone
        would you describe it as?
A:      It's a flip phone.
Q:      An on that day did you have the opportunity to see or hear that phone ring?
A:      Yes.
Q:      And were there any things that caught your attention on that phone while it was in
        your custody?
A:      Yes. When I was doing my report back at the station, it was - -

        *       *       *       *       *

Q:      Now, when that phone rang while you were writing your report, did you open the
        phone at any time?
A:      No.
Q:      Did you do anything to enhance your view of the phone?
A:      No.
Q:      What did you do when the phone rang?
A:      I looked at the screen on the front and read - -
Q:       Could you hold up the phone so they could see the screen?
A:      (Complying.)
Q:      And what, if anything, did you see on the phone?
A:      There was a message from a person named Anna Fri, F-R- I.

Q:     And what was the message that you saw?
A:     "N word, I need some shit"

42.     On January 9, 2017, McKiernan gave the following testimony at Alvarez's trial

on cross-examination regarding the cell phone:

Q:     And the phone, it rang when you were back at the office. That's when you picked
       up that phone; is that correct?
A:     Yes.
Q:     You didn't hear it ring?
A:     I don't remember.
Q:     Did you put in your pocket or put it in a bag?
A:     I put it in a bag.
Q:     And you didn't have a search warrant to search that phone?
A:     No. That's why I didn't search it.

43.     The text message evidence played a critical role at trial. The Commonwealth used

the evidence as proof that Alvarez was guilty of drug distribution.

44.     At trial, the Commonwealth presented Carl Supernor ("Supernor"), a sergeant in

the Worcester Police Department, as an expert witness regarding narcotics transactions.

45.     Among other things, Supernor testified about the significance of cash and cell

phone communications in the drug trade, techniques used to effectuate a drug transactions and

common methods for ingesting crack cocaine.

46.     Supernor gave the following testimony addressing the content of the text

message:

Q:     And could you tell us, what significance do cell phones play in narcotics
       distribution?

A:     In order to have a drug transaction, there has to be some type of communication.
       We refer to this open-air drug market or hand-to-hand drug sales in the -- you
       know, out in the public, in certain areas in the City of Worcester.

       It can be conducted without any communication. What I'm saying by that is, a
       person who is trying to seek out drugs but doesn't have a connection to find drugs
       could just show up in Main -- show up in a certain area of the city and try to find a
       drug dealer who is working the streets.

But the more common way is through use of cell phones, whether it be an actual phone call and have a conversation with a drug dealer, or to use the phone through text messages and just request what you want, where you're going to meet, and what time this is going to happen. It's usually the buyer that reaches out to the dealer, because the buyer knows when he's ready to use and when he has money to purchase drugs, and then the dealer will dictate typically when and where he'll make the sale.

Q:     Now, based on your training and experience is it consistent or common for a buyer to use words like "I need crack" or "I need drugs" in a text message to the dealer?

A:     No.

Q:     What would they do instead?

A:     Once again, with that secrecy, they would probably be a little more discreet. It's not -- it's not impossible that someone could just come right out and say, "I need crack cocaine," but the more common is something more on, "Are you good?" You know, "I need one, I need two," something a little bit more coded that wouldn't just be right out there on the dealer's phone.

Because many times the dealer will say, hey, don't text me with that kind of information because you're putting right on there that I'm selling crack cocaine. So what we usually see when we use search warrants or phones and look at the text messages that are occurring, it's something a little bit more coded.

47.     At the conclusion of his direct examination, Supernor was asked the following hypothetical question:

Now, finally, based on your training and experience as a person in possession of one small rock of cocaine, a cell phone where he's receiving – he or she is receiving text messages that are slightly coded, and they are in possession of $20 bills consistent with a drug dealer or a personal user?

48.     Supernor responded to the hypothetical with: "Drug dealer." He provided the following rationale:

For the reason just stated, that we talked about. It's more likely that a drug user would have a small amount of crack cocaine and probably some instrument like a stem or a crack pipe, just smoke that with a lighter and stuff like that.

> If I'm looking at items that are more consistent with a person dealing drugs, a cell phone, a cell phone with a text message, a coded text message, monies of denominations, especially $20 bills, and items of that such, it would be more consistent with someone who is dealing drugs than someone who is just a personal user.

49.     On cross-examination, Supernor testified that the small amount of the crack cocaine taken from Alvarez, standing alone, would be consistent with personal use and not distribution.

50.     At trial, the prosecutor highlighted the existence of the text message evidence in his closing argument:

> Mr. Alvarez also had his cell phone on him, and you heard from Sergeant Supernor that they are used to arrange sales. Buyers often use code phrases when they order, and in this case, without having to get a search warrant, without having to open the phone, Captain McKiernan saw it come up on Mr. Alvarez's phone, the phone that he recovered from Mr. Alvarez, "N word, I need some shit." I'd suggest to you that's consistent with what Sergeant Supernor explained to be how an order would happen between a buyer and a seller. And in this case, that would indicate that Mr. Alvarez is a seller of drugs.

51.     The prosecutor further stated during closing argument:

> Sergeant Supernor also testified, and I'd suggest it's very revealing, that possession of crack, along with a number of $20 bills and a phone that appears to have somebody using a code phrase like "I need some shit," it's consistent with someone who's a dealer, not a personal user.

52.     On January 10, 2017, the jury found Alvarez guilty of one count of distribution of cocaine (G.L. c. 94C, § 32A) and one count of trespassing (G.L. c. 266, § 120). The Court order that Alvarez be committed without bail.

53.     On January 11, 2017, Alvarez waived his right to trial and pled guilty to the second or subsequent component of the drug distribution offense (G.L. c. 94C, § 32A(d)).

54.     The Court (Wrenn, J.) sentenced Alvarez to a three and one-half year to three and one-half year and a day (3.5 year mandatory minimum sentence) state prison sentence for the drug offense and a thirty-day concurrent house of correction sentence for the trespassing offense.

55.     Alvarez appealed his convictions.

56.     On August 29, 2018, the Supreme Judicial Court affirmed Alvarez's conviction of possession of cocaine with intent to distribute, subsequent offense and reversed his conviction of criminal trespass. See Commonwealth v. Alvarez, 480 Mass. 1017 (2018).

57.     On or about September 23, 2019, Alvarez filed a motion for new trial in the Superior Court.

58.     As grounds for the motion, Alvarez alleged that McKiernan provided false testimony throughout the course of the criminal proceedings about the Phone and the text messages. Alvarez argued that the knowing presentation of false testimony by McKiernan, as a member of the prosecution team, violated his due process rights.

59.     To demonstrate that McKiernan's testimony was false, Alvarez presented the Phone's user manual and an expert affidavit. Both items demonstrate that the Phone is not capable of displaying the content of text messages on its outer screen. The evidence squarely contradicted McKiernan's testimony that he observed text message "pop up" on the Phone's outer screen allowing him to read it.

60.     The Phone's User Guide gives the following directions for reading a text message on the phone:

> To read a message:
> ➢ When you receive a message, your phone will display a notification message. Use your navigation key or select **View**.

61.     Steven R. Verroneau is an experienced digital forensic examiner. Mr. Verroneau reviewed pictures of the Phone and the Phone's User Guide.

62.     Mr. Verroneau stated in his affidavit:

> The outer screen will at most display an incoming calling number or the fact that there is a new incoming [message] notification.

> Based upon my experience with these types of cellular devices and by review of the pictures and manual for this particular device, the content of a text message would not be displayed on the front, "outer" screen of the phone.

63.     On September 30, 2019, the Superior Court ordered the Commonwealth to file a responsive pleading to Alvarez's motion for new trial within thirty days.

64.     The Commonwealth did not oppose Alvarez's motion for new trial and, instead, filed a joint motion for new trial along with Alvarez.

65.     On November 19, 2019, the Superior Court (Wrenn, J.) allowed the joint motion for new trial.

66.     On that same day, the Commonwealth filed a *Nolle Prosequi* as to the only remaining count against Alvarez -- Count 2, Distribution of Cocaine, subsequent offense.

67.     Mr. Alvarez was released from incarceration on November 19, 2019.

68.     Mr. Alvarez was incarcerated from January 10, 2017 until November 19, 2019 and, including 69 days of credit, served approximately 1,111 days of his sentence.

69.     Of the seven criminal indictments that Alvarez was initially charged with, all indictments have been either dismissed, received a not guilty verdict at trial, overturned on appeal or vacated after the motion for new trial and subsequently *nolle prossed* by the Commonwealth.

The City's Policies and Customs

70.     There was no legal authority or justification for McKiernan's search of the Phone.

71.     To justify his actions, McKiernan submitted a Statement of Facts in Support of Application for Criminal Complaint, that contained falsehoods, in an effort to secure serious criminal charges against Alvarez.

72.     McKiernan provided false testimony to the Grand Jury in an effort to obtain indictments against Alvarez.

73.     McKiernan falsely testified at the hearing on Alvarez's motion to suppress in order to prevent unlawfully obtained evidence from being suppressed.

74.     McKiernan falsely testified at Alvarez's trial in order to secure Alvarez's criminal conviction.

75.     The City and its police department have a poor reputation for credibility. There are credible allegations that other officers from the City's police department have engaged in similar conduct during drug investigations and prosecutions. For example, the article Watchdog Report: Lawyer calls for probe of Worcester police credibility, published on August 18, 2018 in the Worcester Telegram and Gazette, identifies several criminal cases, similar to the instant case, where "defense attorneys pointedly questioned police conduct, and the charges in many of them were dismissed." A true and accurate copy of the article is attached hereto as Exhibit A.

76.     The City has failed to ensure that McKiernan and its other police officers do not fabricate evidence.

77.     The City has failed to ensure that McKiernan and its other police officers do not file police reports and other statements that include deliberate falsehoods.

78.     The City has failed to ensure that McKiernan and its other police officers do not falsely testify before the Grand Jury, at evidentiary hearings and at criminal trials.

79.     The City has a custom or practice of permitting constitutional violations and that the custom or practice is the moving force behind McKiernan's constitutional violation in this case.

80.     The City's policies and customs led McKiernan to believe that he could violate Alvarez's constitutional rights by engaging in unlawful searches and testifying falsely without sanction by the police department.

Alvarez's Damages

81.     As a direct and proximate result of the Defendants' actions, Alvarez has suffered injuries and damages including, but not limited to:

    a.     intrusion and seizure of his personal property and violation of his right to privacy;

    b.     deprivation of due process rights by the presentation of false evidence;

    c.     deprivation of liberty by imprisonment for a period of nearly three years;

    c.     severe humiliation, emotional distress and embarrassment;

    d.     interference with his family relationships; and

    e.     lost wages, earning capacity, lost employment and employment opportunities.

Count I
42 U.S.C. § 1983: Unlawful Search and Seizure
(Against McKiernan)

82.     Paragraphs 1 through 81 are incorporated herein by reference as if fully set forth herein.

83.     By searching the Phone without a warrant and maliciously using the unlawfully obtained evidence to prosecute Alvarez, McKiernan deprived Alvarez of rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures.

84.     As a result of these violations of his civil rights, Alvarez has suffered the damages described above.

Count II
42 U.S.C. § 1983: Presentation of False Testimony
(Against McKiernan)

85.     Paragraphs 1 through 84 are incorporated herein by reference as if fully set forth herein.

86.     A conviction obtained by the knowing use of false testimony violates the due process clause guaranteed by the Fourteenth Amendment of the United States Constitution.

87.     By maliciously prosecuting Alvarez, through the use of false evidence, McKiernan deprived Alvarez of the right to due process of law.

88.     As a result of these violations of his civil rights, Alvarez has suffered the damages described above.

Count III
Massachusetts Civil Rights Act; M.G.L. c. 112, § 11H-I
(Against McKiernan)

89.     Paragraphs 1 through 88 are incorporated herein by reference as if fully set forth herein.

90.     McKiernan violated Alvarez's rights by illegally searching and seizing his property.

91.     McKiernan violated Alvarez's rights by providing false testimony in a criminal proceeding in an effort to convict and incarcerate him.

92.     As a result of these violations of Alvarez's civil rights, Alvarez has suffered the damages described above.

## Count IV
## <u>False Arrest and False Imprisonment</u>
(Against McKiernan)

93.     Paragraphs 1 through 92 are incorporated herein by reference as if fully set forth herein.

94.     McKiernan arrested Alvarez and charged him with crimes that were based upon falsified evidence.

95.     McKiernan continued to provide false testimony throughout the course of Alvarez's criminal proceedings.

96.     McKiernan's false testimony was the direct and proximate cause of Alvarez's imprisonment.

97.     As a direct and proximate cause of McKiernan's actions, Alvarez has suffered the damages described above.

## Count V
## <u>Malicious Prosecution</u>
(Against McKiernan)

98.     Paragraphs 1 through 97 are incorporated herein by reference as if fully set forth herein.

99.     McKiernan instituted, with malicious intent, criminal proceedings against Alvarez.

100.    The criminal proceeding was terminated in Alvarez's favor.

101.    As a direct and proximate cause of McKiernan's actions, Alvarez has suffered the damages described above.

## Count VI
## <u>Intentional Infliction of Emotional Distress</u>
(Against McKiernan)

102.     Paragraphs 1 through 101 are incorporated herein by reference as if fully set forth herein.

103.     Through his outrageous conduct, McKiernan intentionally inflicted emotional distress upon Alvarez.

104.     As a direct and proximate cause of McKiernan's actions, Alvarez has suffered the damages described above.

Count VII
42 U.S.C. § 1983: "Monnell Claim"
(Against City of Worcester)

105.     Paragraphs 1 through 104 are incorporated herein by reference as though fully set forth.

106.     The City developed or maintained policies or customs that demonstrated an indifference to the constitutional rights of persons in Worcester.

107.     The policies and customs of the City of Worcester and its police department, caused it to inadequately supervise and train police officers, including McKiernan, on the constitutional limits on search and seizure.

108.     The policies and customs of the City of Worcester and its police department condoned the fabrication of evidence or the presentation of false testimony in Court.

109.     The City of Worcester's policies and customs were the moving force behind the violations of Alvarez's constitutional rights by McKiernan.

110.     As a result of these violations of his civil rights, Alvarez has suffered the damages described above.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Carlos A. Alvarez, Jr. respectfully requests the following relief:

1.      Award compensatory and special damages to Plaintiff against the Defendants;

2.      Award punitive damages to Plaintiff against the Defendants;

3.      Award reasonable attorneys' fees and costs to the Plaintiffs; and

4.      Award any other relief as this Court deems just and equitable.

<u>JURY DEMAND</u>

Plaintiff hereby requests a trial by jury on all counts.


Respectfully submitted,

CARLOS A. ALVAREZ, JR.,
By his attorney,

/s/ *Matthew J. Koes*
Matthew J. Koes, BBO No. 668682
M. KOES LAW, LLC
340 Union Ave.
Framingham, MA 01702
(508) 598-7060
mkoes@mkoeslaw.com

Dated: January 8, 2020.