# Exhibit A



# Watchdog Report: Lawyer calls for probe of Worcester police credibility

By Brad Petrishen
**Telegram & Gazette Staff**
Posted Jul 28, 2018 at 7:28 PM
Updated Aug 18, 2018 at 10:25 AM

WORCESTER – Some city police officers habitually engage in deception and misconduct in their arrests, local civil rights lawyer Hector E. Pineiro alleges in a letter to authorities demanding an investigation.

In a 749-page submission to local, state and federal prosecutors, Mr. Pineiro alleges some police gang- and drug-unit members have credibility problems not being disclosed to defendants. He charges that officers in drug investigations lie, fabricate evidence, file malicious charges and suppress exculpatory evidence.

"This has occurred in cases your office prosecuted, in some instances with actual knowledge of prosecutors," Mr. Pineiro wrote Worcester District Attorney Joseph D. Early Jr. in an April 10 cover letter urging an investigation.

The materials, also sent to Attorney General Maura T. Healey and U.S. Attorney for Massachusetts Andrew E. Lelling, cite 12 cases alleged to highlight a pattern of misconduct.

In several cases, judges or defense attorneys pointedly questioned police conduct, and charges in many of them were dismissed.

"There is this thing called the Constitution," Worcester First Justice David P. Despotopulos told a prosecutor in one of the cases. "Maybe they (police) should read it."

The judge's statement came after police entered a man's home without a warrant using house keys they took from him after an arrest in his car on suspicion of dealing drugs.

Other cases cited in the letter include one in which a judge remarked that it appears police "stepped on" themselves, two in which defense attorneys accused police of staging evidence and another in which an off-duty officer sent the brother of a fellow officer home from a shooting with which the brother was eventually charged.

"What's happening is wrong," said Joseph F. Hennessey, a police officer outside Worcester for 23 years who now practices defense law in the city. "A police officer is supposed to be truthful, law-abiding."

Neither Police Chief Steven M. Sargent nor City Manager Edward M. Augustus Jr. agreed to be interviewed or answer questions for this story.

In a brief statement, Mr. Augustus noted most of the cases cited have resulted in lawsuits against the city, and said police internal affairs investigators would probe the others.

Mr. Early also declined an interview. His office provided a letter of response to Mr. Pineiro dated May 8 that states the office "will review your correspondence."

Asked for comment, the attorney general's office said only that it received the letter, while the U.S. attorney's office in Massachusetts said it does not confirm or deny investigations.

The U.S. attorney's office in April launched a probe into possible civil rights violations by the Springfield police narcotics unit. That followed a 2016 controversy in which a detective there was recorded threatening to kill a teenager and plant drugs on another.

None of the materials in Mr. Pineiro's submission contain such brazen threats, nor is it clear that any police officer was determined by the court to have lied. But several Worcester defense attorneys with connections to the cases he cited said they have serious concerns about the practices described. In multiple cases, videos or photos appear to call into question accounts given by officers, and judges approved requests to suppress evidence based on violations of the Constitution.

Nancy Gertner, a retired Massachusetts federal judge, said after reading Mr. Pineiro's cover letter that the accusations appear to merit investigation.

"The issue in Worcester, as in every other city and town, is accountability," she said.

Judge Gertner, who now teaches at Harvard Law, frequently speaks on issues of civil rights. Asked about Worcester's reputation for accountability, she said that while she did not sit here as a judge, she has not heard good things.

Judge Gertner used the phrase "culture of impunity" to describe the department's reputation, saying officers have believed they "could get away with virtually anything."

**'Protective sweep'**

The case that drew Judge Despotopulos' ire sprung from an Aug. 29, 2014, stop of a vehicle in Main South.

Carl S. Johnson, a 63-year-old who had not been arrested by city police before that night, was stopped after a passenger he'd picked up briefly was caught with a small bag of suspected crack after exiting his car.

Police said in reports they'd conducted controlled purchases from Mr. Johnson before the stop. After arresting him but failing to find drugs in his car, they took his keys, went to his home nearly a mile away and, without a warrant, entered his home to conduct a "protective sweep."

A 1990 Supreme Court ruling limits protective sweeps to cases in which someone was arrested at home and police believe there may be an imminent danger remaining at the arrest scene.

After his criminal case was dismissed, Mr. Johnson - who has not been arrested in Worcester since - filed a federal lawsuit.

At a hearing on the lawsuit in Worcester in January, U.S. District Court Judge Timothy S. Hillman appeared to express skepticism after a city lawyer called the search constitutional.

"Says who?" Judge Hillman asked.

"There are - there are cases that I've - I've," staff attorney Wendy L. Quinn started to respond before Judge Hillman cut her off, saying, "I can't wait."

Lynne S. Martin, a longtime defense attorney in the city who represented Mr. Johnson, said she's defended several other cases in which city police took someone's keys for a "protective sweep" without a warrant.

"I think it's unfortunate we all just kind of accept that this is what goes on," she said, agreeing that many of the issues raised by Mr. Pineiro warrant scrutiny.

Mr. Pineiro, 58, has long been the chief critic of the Worcester police and is often criticized by city officials as trying to "extort" settlements from taxpayers.

Recently, he has been working with Mr. Hennessey, 53, who moved his practice here a year and a half ago and says his concerns are buttressed by things he saw during his police career.

"I worked with a supervisor who said, 'You can justify any search after you do it,' " said Mr. Hennessey, who served for about six years in Ashland, two years in Waltham and 15 years in Sherborn.

Mr. Hennessey, who served on multiple drug task forces and performed undercover work, believes untruthfulness in drug investigations is a problem in departments everywhere.

Untruthfulness by police officers, commonly referred to as "testilying," has long been documented in courts nationwide.

The New York Times in March uncovered 25 instances in the past three years in which testimony by police officers in the nation's largest city was deemed to likely be untrue by judges or prosecutors.

The Times noted there are hundreds of thousands of cases resolved in New York City each year - it tallied 270,000 in 2016. It reported the 25 cases are "almost certainly" a fraction in which police lying was suspected because the majority of such cases end in plea deals before officers are called to the stand.

The Times found that most often the false statements were made to hide illegal searches and seizures – a common thread in many of the allegations Mr. Pineiro made against Worcester police, who average about 7,000 arrests per year.

The Times noted some officers believe the ends – getting drugs and dealers off the streets – justify the sometimes illegal means, an idea Mr. Hennessey refuses to accept.

"Justice is never served if obtained by deceit," he said. Sometimes, the guilty go free because of police conduct, he said, while other times, the innocent can be swept up.

"There are some great police officers out there, and when things like this are done by some officers, it tarnishes the entire group," he said.

Mr. Pineiro's letter cites two drug cases in which Mr. Hennessey raised concerns about the truthfulness and legality of the police's work.

In one case, charges against a man charged with selling heroin did not move forward after Mr. Hennessey, citing surveillance video of the arrest he obtained, informed the court he planned to file a motion questioning the credibility of the officers' accounts.

"The police step on themselves here a little bit?" Judge Robert G. Harbour asked a prosecutor on April 29, 2016, after Mr. Hennessey informed the court of his motion.

Police wrote in a report that Mr. Hennessey's client, Alison Skerrett , was in the driver's seat of a vehicle where heroin was found just before his arrest.

But the surveillance video appears to show that Mr. Skerrett was apprehended instead after he walked out of a nearby restaurant with food in his hands and saw police approaching his vehicle.

After Mr. Hennessey disclosed his motion, the prosecutor told the judge the police officers wanted to see the matter ended quickly.

"They would like to see it ended. That's unusual for the Worcester police," Judge Harbour said. "You tell them that I wasn't happy with the situation, OK?"

In the second case, Mr. Hennessey alleged in an affidavit included in Mr. Pineiro's submission that police photos taken at an apartment where drugs were seized showed officers had staged evidence in order to justify a search warrant.

"It is obvious that the scene was manipulated, or staged by one or more officers with intent to perpetrate a fraud on the court," Mr. Hennessey wrote.

Mr. Hennessey alleged timestamps on the photos showed sandwich bags atop a fridge that police used as part of their justification for a warrant were moved there after police began searching.

The former officer had planned to request a Franks hearing - a hearing to determine whether an officer made a false statement to obtain a search warrant - but that was not held because a judge prior to that ruled that the search was illegal.

Worcester Superior Court Judge Daniel M. Wrenn suppressed the evidence from the search after finding that the search warrant affidavit did not prove that an amount of marijuana police said they observed from a doorway of an apartment was enough to justify a search.

Police had found 240 grams of cocaine and more than $15,000 in the apartment. Charges against the defendant, Hernan Ortiz, were dropped after the judge's ruling, and the money eventually returned.

In another affidavit included in Mr. Pineiro's packet, longtime city defense lawyer Peter L. Ettenberg alleged evidence was staged in one of his drug cases.

In that case, Mr. Ettenberg noted that Assistant District Attorney Michael D. McHugh informed him before trial that photographs of cut corner baggies on a car's seat entered into evidence were actually found somewhere else in the car.

"Hence, the photographs of the evidence were staged," Mr. Ettenberg wrote.

Mr. Ettenberg further wrote that three city detectives testified there were cut corner baggies in the car and that an exhibit claiming to contain them was entered into evidence.

When the exhibit was opened at trial, Mr. Ettenberg said, "no cut corner baggies existed."

Mr. Piniero commended Mr. McHugh for giving Mr. Ettenberg the information. But he and Mr. Hennessey say such disclosures are not generally being made.

Mr. Hennessey said that in Mr. Skerrett's heroin case, he gave a different prosecutor the video that called into question the officers' statements "long before" he filed his motion, but that to his knowledge no inquiry into their conduct was performed before Mr. Pineiro's letter.

Records included in the packet show another local judge, Worcester District Court Judge Andrew M. D'Angelo, has also criticized city police tactics.

In a 2014 ruling suppressing evidence in a drug case, Judge D'Angelo wrote that the affidavit police used to obtain a search warrant was deficient in numerous ways.

"Based on the violations of the entire affidavit, along with the hope that this decision will deter such violations in the future, the court finds suppression is necessary," he wrote.

**'Noble cause' corruption?**

While Mr. Johnson, whose home was illegally swept, has not been arrested again since 2014, most of the men whose cases Mr. Pineiro cited have considerable records in the county. Police are charged with getting guns and drugs off the streets – arrests often welcomed in neighborhoods plagued by street violence – and shootings in Worcester have decreased in recent years.

Howard Friedman, a longtime Boston civil rights attorney and former longtime president of the National Police Accountability Project, said a number of the allegations appear to portend a problem in the department with something known as "noble cause" corruption.

In such cases, he said, officers operate with the mindset that in the end, getting the "bad guy" off the streets justifies an any-means-necessary approach.

In addition to violating the rule of law, Mr. Friedman said such acts, if unchecked by supervisors, can embolden officers to act with impunity.

"It may start with people who actually have criminal records," he said. "But in the end, no one can feel safe."

Mr. Friedman noted that in a recent case he settled in Lowell, a police officer's allegedly false police report helped charge an innocent person who had drugs planted on them by a crooked informant.

The case was one of 17 dismissed involving the informant, and Lowell paid $750,000 to resolve the lawsuit.

"That's what can happen if you're not properly supervising," Mr. Friedman said, adding that Mr. Pineiro's letter seems to indicate a problem in Worcester.

Mr. Friedman, who has been suing Boston police for three decades, said he could not recall a situation where officers there took someone's keys and searched their home as is alleged in the Carl Johnson case.

Judge Despotopulos' comment should have spurred a serious probe, he said, because judges "don't say things like that lightly."

The Telegram & Gazette, in a public records request, asked the police department for internal affairs investigations of officers involved in the dozen cases cited by Mr. Pineiro.

The department said it would cost $3,642 to provide the records. It said there were 2,189 pages of records responsive to the request, which would take four minutes per page to redact in accordance with exemptions to public records law at $25 an hour.

Mr. Friedman agreed that people facing criminal charges need to be made aware of credibility issues of the officers who have charged them.

"The bottom line is, when people are caught lying on video, or writing a report that isn't even good fiction … something needs to happen to them, or you know it's going to continue," he said.

Mr. Friedman cited an example in Boston where such practices can lead to tragedy. In 1988, Officer Sherman Griffiths was killed while serving a warrant obtained by a fellow officer that was based on a fictitious informant.

A murder charge against Albert Lewin, the man who shot the officer, was dismissed after the revelation, and instead, the officer who obtained the warrant was indicted on a perjury charge.

Mr. Friedman said it's important that police, prosecutors and judges all strive to eliminate "noble cause" corruption to prevent the subversion of justice.

The cases cited by Mr. Pineiro, he said, raise questions about whether authorities in Worcester are committed to doing so.

"They'll dismiss the case for that (specific) criminal defendant, but the system doesn't seem to change," he said.

Jacqueline Dutton, who runs the public defender's office in Worcester, said defense attorneys often wonder how many times people not charged with crimes have their civil rights violated.

Ms. Dutton said that cases around the country show that police, like others in society, exhibit conscious or unconscious bias based on race that can lead to profiling.

"The reality of it is, it's happening to people who aren't committing crimes," she said. "To pretend like it's not – to pretend like it's just a gang issue – misunderstands how a lot of people live their daily lives in Worcester and other places."

Mr. Hennessey said he has had concerns about police conduct in all of the 15 to 20 drug cases he has defended here. He believes supervisors are aware of civil rights violations but do not make it a priority to investigate.

"They're turning their backs because the job is getting done," he said. "They're getting the drugs off the street, they're getting the drug dealers off the street."

Mr. Hennessey said police officers in the elite units face pressure to continue making arrests that often spawn press releases showcasing the drugs seized.

"If you don't produce, you're not staying in these units," said Mr. Hennessey, which can lead to officers cutting corners.

Michael S. Hussey, who oversaw the public defender's office in Worcester for 23 years, said in an interview that he believes the so-called War on Drugs has placed police officers countrywide in positions that can lead to untruthfulness.

"Like in any war, the people who fight it often believe they're in the right, and the ends justify the means when you're going after the so-called bad guys," he said. "The potential for abuse is inherent in a situation in which you're trying to combat a public health problem through the use of force."

Mr. Hussey said he does not know whether "testilying" happens any more or any less in Worcester than anywhere else. It's something that needs to be addressed in the criminal justice system, he said, though he is not sure the district attorney, by virtue of their close relationship with police, is the appropriate person to investigate.

"There's nothing that justifies not telling the truth," he said, adding that while defense attorneys can highlight the issue, it will take judges and prosecutors to root it out.

"If a prosecutor believes a police officer is not telling the truth, he shouldn't call the witness," he said. "Most of the time, police can get away with saying whatever they want."

*Contact Brad Petrishen at brad.petrishen@telegram.com. Follow him on Twitter @BPetrishenTG.*

**This story has been amended to correct the date that Officer Sherman Griffiths was killed.**