UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS

_____
                                    )
CARLOS A. ALVAREZ, JR.,              )
                Plaintiff,           )        CIVIL ACTION
v.                                   )        NO. 4:20-40004-TSH
                                    )
CITY OF WORCESTER and CAPTAIN        )
MICHAEL A. MCKIERNAN,                )
                Defendants.          )
_____ )


### ORDER AND MEMORANDUM ON DEFENDANTS' MOTION TO DISMISS (Docket No. 6)

### March 27, 2020

**HILLMAN, D.J.**

Carlos Alvarez ("Plaintiff") filed this action against the City of Worcester (the "City") and Captain Michael McKiernan ("Captain McKiernan") (collectively, "Defendants"), alleging various federal and state civil rights claims and common-law tort claims arising from his arrest and prosecution on drug charges. (Docket No. 1). Defendants move to dismiss all claims. (Docket No. 6). For the following reasons, the Court ***grants in part*** and ***denies in part*** the motion.

### Background[1]

On January 12, 2014, while on duty, Worcester Police Captain McKiernan observed what he believed to be a suspicious vehicle parked in the lot shared by Compare Foods and Odd Fellows Home on Main Street in Worcester, MA. (Docket No. 1 at 3). Ms. Suarez, a woman with whom Captain McKiernan had had previous interactions, and Mr. Gomez, a homeless man who frequented the area, were sitting inside the vehicle. (Docket No. 1 at 3). Captain McKiernan set

---

[1] The following facts are taken from the Plaintiffs' complaint (Docket No. 1) and assumed true for the purposes of this motion.

up surveillance and followed the vehicle as it left the lot. (Docket No. 1 at 3). The vehicle stopped outside Fortuna Market, and Mr. Gomez entered the store. (Docket No. 1 at 3). When he returned, the vehicle drove back to the Compare Foods lot. (Docket No. 1 at 3). The duo exited the vehicle, and Mr. Gomez approached Plaintiff. (Docket No. 1 at 3).

Believing that Mr. Gomez and Plaintiff "were about to engage in a drug transaction, [Captain] McKiernan parked his cruiser and walked toward [Mr.] Gomez and [Plaintiff]." (Docket No. 1 at 3). During questioning, Plaintiff ran away from Captain McKiernan. (Docket No. 1 at 4). Officer Joseph Tolson ("Officer Tolson"), who had arrived on scene to provide back-up, "intercepted and tackled [Plaintiff] several hundred yards from the Compare Foods parking lot." (Docket No. 1 at 4). Officer Tolson struck Plaintiff in the leg with a hard object and placed him in handcuffs. (Docket No. 1 at 4). Captain McKiernan alleged that, as he helped Officer Tolson lift Plaintiff off the ground, "he observed a 'plastic bag with a small white object in it' fall out of the left-hand side of [Plaintiff's] pants." (Docket No. 1 at 4). Officer Tolson did not observe any bag fall out of Plaintiff's pants. (Docket No. 1 at 4).

Captain McKiernan recovered $130 in cash and a Boost Mobile, Kyocera Coast (Model No. 2151) phone (the "Phone") from Plaintiff. (Docket No. 1 at 4). After arresting Plaintiff, Captain McKiernan applied for criminal process via a Statement of Facts in Support of an Application for Criminal Complaint. In that document, Captain McKiernan reported that the Phone rang "many times" while he was completing a police report on the incident and that he "saw a message from 'Anna Fri' pop up on the screen which said 'Nigga I need some shit.'" (Docket No. 1 at 4, 5). On January 13, 2014, Plaintiff was charged with possession of cocaine with intent to distribute, resisting arrest, and trespassing. (Docket No. 1 at 5).

Captain McKiernan testified about the contents of the text message before the Worcester County grand jury on January 23, 2015. (Docket No. 1 at 5). Three days later, the grand jury indicted Plaintiff for one count of distribution of a class A drug, subsequent offense; two counts of distribution of cocaine, subsequent offense; two counts of drug violation near a school zone; one count of trespassing; and one count of resisting arrest. (Docket No. 1 at 5).

Plaintiff filed a pretrial motion to suppress evidence of the text message on October 28, 2015. (Docket No. 1 at 6). In the motion, he argued that "McKiernan conducted an illegal search and seizure by reading the text messages on the Phone." (Docket No. 1 at 6). At an evidentiary hearing before the court, Captain McKiernan disclaimed having opened or manipulated the Phone. The court accordingly denied the motion to dismiss. (Docket No. 1 at 6–7).

Captain McKiernan repeated this testimony during Plaintiff's trial. (Docket No. 1 at 7–8). His evidence "played a critical role at trial" because "[t]he Commonwealth used the evidence as proof that [Plaintiff] was guilty of drug distribution." (Docket No. 1 at 8). The jury ultimately convicted Plaintiff on one count of distribution of cocaine and one count of trespassing. (Docket No. 1 at 10). On appeal, the Supreme Judicial Court affirmed the distribution conviction and reversed the trespassing conviction. (Docket No. 1 at 11).

On September 23, 2019, Plaintiff moved for a new trial, asserting that Captain "McKiernan provided false testimony throughout the course of the criminal proceedings about the Phone and the text messages." (Docket No. 1 at 11). In support, Plaintiff submitted expert testimony and portions of the Phone's user manual indicating that it "is not capable of displaying the content of text messages on its outer screen." (Docket No. 1 at 11). The Commonwealth offered no opposition, and court granted the motion on November 19, 2019. (Docket No. 1 at 12). That same day, the Commonwealth filed a *nolle prosequi* on the charges. (Docket No. 1 at 12).

Plaintiff commenced the instant action on January 8, 2020. (Docket No. 1). He raises six claims against Captain McKiernan: unlawful search and seizure (Count I), presentation of false testimony (Count II), violation of the Massachusetts Civil Rights Act (Count III), false arrest and false imprisonment (Count IV), malicious prosecution (Count V), and intentional infliction of emotional distress (Count VI). He raises a *Monell* claim against the City (Count VII). (Docket No. 1 at 17). Defendants moved to dismiss all claims on February 4, 2020.

## **Legal Standard**

In evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. Am. Airlines, Inc*., 199 F.3d 68, 69 (1st Cir. 2000). To survive the motion, the complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

## **Discussion**

### *1. Statute of Limitations*

Defendants contend that Plaintiff's federal civil rights claims (Counts I and VII), state civil rights claim (Count III), and state law tort claims (Counts IV and VI) are barred by the applicable

4

three-year statute of limitations.² *See* M.G.L. c. 260 § 2A. "To assert a statute of limitations defense successfully in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), 'the facts establishing that defense must: 1) be definitively ascertainable from the complaint and other allowable sources of information, and 2) suffice to establish the affirmative defense with certitude.'" *Doe v. Bos. Pub. Sch.*, 80 F. Supp. 3d 332, 335 (D. Mass. 2015) (quoting *Gray v. Evercore Restructuring, LLC*, 544 F.3d 320, 324 (1st Cir. 2008)). Defendants have not shown that the allegations in the complaint definitively establish their entitlement to a statute of limitations defense.

A cause of action generally accrues when the plaintiff knows or has reason to know of the injury which is the basis for his claim. *See Kennedy v. Town of Billerica*, 502 F. Supp. 2d 150, 155 (D. Mass. 2007), *aff'd*, 617 F.3d 520 (1st Cir. 2010) (§ 1983); *Sampson v. Town of Salisbury*, 441 F. Supp. 2d 271, 275 (D. Mass. 2006) (MCRA); *Pagliuca v. City of Bos.*, 35 Mass. App. Ct. 820, 824 (1994) (state law tort claims). Here, the allegations in the complaint plausibly suggest that Plaintiff did not have reason to know of his injury until more than a year after his initial conviction. *See Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 4 (1st Cir. 1995) (Lynch, J., concurring) ("There may be circumstances in which plaintiffs neither knew, nor had reason to know, at the time of their warrantless arrests that they had suffered a constitutional injury and so the statute would not begin to run upon arrest"); *see also Nieves*, 241 F.3d at 53 n.4 (citing *Calero–Colon*, 68 F.3d at 4–5 (Lynch, J., concurring) for the proposition that "there may be rare and exotic circumstances in which a section 1983 claim based on a warrantless arrest will not accrue at the time of the arrest"). Plaintiff pleads, for example, that Captain McKiernan expressly denied having

---

² The Court looks to state law to determine the statute of limitations in a § 1983 action. *See Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001). Thus, Plaintiff's federal and state claims are governed by the same three-year statute of limitations.

5

conducted any search of the Phone in sworn testimony before the state court. (Docket No. 1 at 6–8). A rational trier of fact could determine that Plaintiff only had reason to know that a search had occurred when he learned that, contrary to Captain McKiernan's assertions otherwise, the Phone could not display text messages on its outer screen. (Docket No. 1 at 11). And because Plaintiff's cause of action would, under these circumstances, have accrued in the fall of 2019, the Court cannot find his claims untimely as a matter of law.[3] The Court accordingly ***denies*** the motion to dismiss Counts I, III, IV, VI, or VII.[4]

### 2. § 1983 False Testimony Claim (Count II)

Defendants contend that this Court should dismiss Count II because a plaintiff cannot assert a federal malicious prosecution claim under the Fourteenth Amendment. Plaintiff responds that his claim rests on the fabrication of evidence, not malicious prosecution,[5] and that the Fourteenth Amendment does provide a cause of action for the fabrication of evidence. Although the First Circuit has not yet addressed this issue, "every court of appeals that has considered the question of whether a state actor has violated the defendant's right to due process of law by fabricating evidence to charge or convict the defendant has answered the question in the affirmative." *Halsey*

---

[3] And even if the complaint did demonstrate, as a matter of law, that Plaintiff's cause of action accrued more than three years before he filed the instant action, a rational trier of fact could nonetheless find his claims timely. By hiding the existence of any injury from Plaintiff, Captain McKiernan arguably tolled the statute of limitations until Plaintiff discovered his deception.

[4] Plaintiff does not assert that Counts I, IV, or VI fail to state a claim. The Court thus does not address the sufficiency of Plaintiff's allegations as to these claims.

[5] Because Plaintiff expressly argues that Count II does *not* raise a claim for malicious prosecution, the Court does not address whether a § 1983 malicious prosecution claim would alternatively be viable under the Fourth Amendment in this case. *See Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 101 (1st Cir. 2013) (holding that a plaintiff may bring a § 1983 malicious prosecution suit under the Fourth Amendment "if he can establish that: 'the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor'" (quoting *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012))).

*v. Pfeiffer*, 750 F.3d 273, 292 (3d Cir. 2014); *see also Whitlock v. Brueggemann*, 682 F.3d 567, 585–86 (7th Cir. 2012) (collecting cases). And, the First Circuit has emphasized in similar circumstances that "those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit" and that "[a]ctions taken in contravention of this prohibition necessarily violate due process." *See Limone v. Condon*, 372 F.3d 39, 45 (1st Cir. 2004) (affirming the denial of qualified immunity where officers developed a witness for prosecution that they knew "would perjure himself and falsely implicate[] three innocent men in" a murder); *see also Hernandez-Cuevas*, 723 F.3d at 101; *Haley v. City of Bos.*, 657 F.3d 39, 49–50 (1st Cir. 2011). Because Plaintiff alleges that Captain McKiernan knowingly created and used false evidence to convict him, the Court declines to dismiss Count II at this stage in the proceedings.

### 3. MCRA Claim (Count III)

"The Massachusetts Civil Rights Act, Mass. Gen. Laws. ch. 12, § 11I, provides a right of action to any person whose exercise or enjoyment of rights secured by the federal or state constitution or laws has been interfered with by 'threats, intimidation, or coercion.'" *Goddard v. Kelley*, 629 F. Supp. 2d 115, 128 (D. Mass. 2009) (citing *Bally v. Northeastern Univ.*, 403 Mass. 713, 717 (1989)). "[T]he MCRA contemplates a two-part sequence: liability may be found where (1) the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something that he has the constitutional right to do." *Santiago v. Keyes,* 890 F. Supp. 2d 149, 154 (D. Mass. 2012). Here, Plaintiff fails to allege any exercise of rights with which Defendants interfered, let alone that such interference was accomplished by means of threats, intimidation, or coercion. The Court therefore ***grants*** the motion to dismiss Count III.

### *4. Malicious Prosecution Claim (Count V)*

"To make out a claim for malicious prosecution, a plaintiff must prove: (1) the institution of criminal process against the plaintiff with malice; and (2) without probable cause; and (3) the termination of the criminal proceeding in favor of the plaintiff." *Gutierrez v. Mass. Bay Transp. Auth.*, 437 Mass. 396, 405 (2002) (citations and internal quotation marks omitted).

Plaintiff has met his pleading burden. Plaintiff alleges that Captain McKiernan fabricated evidence and maliciously initiated criminal proceedings against Plaintiff based on that fabricated evidence. (Docket No. 1 at 1, 8, 13). Plaintiff also alleges that, during his trial, a government witness conceded "that the small amount of crack taken from [Plaintiff], standing alone, would be consistent with personal use and not distribution" (Docket No. 1 at 10), i.e., he pleads facts from which the Court can reasonably infer the absence of other evidence demonstrating probable cause for the distribution charges.[6] Finally, Plaintiff alleges that, the government having filed a *nolle prosequi* in the state case, the proceedings have terminated in his favor. (Docket No. 1 at 12). Because these allegations establish plausible entitlement to relief for malicious prosecution, the Court ***denies*** the motion to dismiss Count V.

---

[6] Defendants suggest that the Court may consider the *content* of the text message in determining whether the government had probable cause because any search of the Phone (if it occurred) was legal. The Court disagrees. Even if a search of the Phone would have been lawful under the Fourth Amendment, Captain McKiernan indisputably lied about how he had obtained those text messages in sworn testimony before the court. Because in this scenario he would have fabricated the source of the text messages, if not the content itself, the Court cannot constitutionally rely on it to establish probable case. *See Hernandez-Cuevas*, 723 F.3d at 101 (noting that fabricated evidence is constitutionally unacceptable to establish probable cause); *cf. Pagan-Gonzalez v. Moreno*, 919 F.3d 582, 602 (1st Cir. 2019) (determining that clearly established law did not "bar[] the defendants from using evidence obtained in the unlawful search to support probable cause" in a § 1983 action where defendants did not lie about whether a search occurred or how the evidence was obtained).

### 5. *Monell Claim (Count VII)*

A municipality is not vicariously liable under § 1983 for the actions of its non-policymaking employees. *See Haley*, 657 F.3d at 51. To establish municipal liability, a plaintiff must show that, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original); *see also Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 691–92 (1978). Specifically, a plaintiff must establish (1) that the City had a policy or custom of permitting unconstitutional conduct and (2) that this policy or custom caused his injury. *See Haley*, 657 F.3d at 51.

Plaintiff has met his pleading burden. He alleges that the City failed to train its officers on the constitutional limits of searches and seizures and failed to ensure that its officers "do not fabricate evidence," "do not file police reports and other statements that include deliberate falsehoods," and "do not falsely testify before the Grand Jury, at evidentiary hearings and at criminal trials." (Docket No. 1 at 13). He further alleges that these failures occurred pursuant to a custom or practice of the City that "condoned the fabrication of evidence and the presentation of false testimony in Court." (Docket No. 1 at 17). And he alleges that the City's custom or practice was "the moving force" behind Captain McKiernan's constitutional violations. (Docket No. 1 at 14, 17). These allegations, taken as true, "support a finding of municipal liability," and thus demonstrate plausible entitlement to relief.[7] *See Haley*, 657 F.3d at 52. The Court accordingly ***denies*** the motion to dismiss Count VII.

---

[7] The Court also finds it significant that the First Circuit reversed the dismissal of a *Monell* claim in *Haley*, where the plaintiff made allegations similar to those of Plaintiff. 657 F.3d at 52.

*6. Qualified Immunity*

The Court declines to dismiss Counts II or V on qualified immunity grounds.[8] These claims relate to the fabrication of evidence and malicious prosecution based on this evidence, not the underlying legality of any search of the Phone. Because clearly established law at the time prohibited the fabrication of evidence and malicious prosecution, *see, e.g.*, *Hernandez-Cuevas*, 723 F.3d at 101; *Haley*, 657 F.3d at 49–50; *Limone v. Condon*, 372 F.3d at 48, Defendants have not shown entitlement to qualified immunity at this stage in the litigation.

## **Conclusion**

For the reasons stated above, Defendants' motion is ***granted in part*** and ***denied in part***. (Docket No. 6). Count III is dismissed. Counts I, II, IV, V, VI, and VII survive this motion.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

---

[8] Defendants only raise a qualified immunity defense with respect to Counts II and V in their briefing. (Docket No. 7 at 19).