UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **CARLOS A. ALVAREZ, JR.,** | ) ) ) | **CIVIL ACTION** |
| Plaintiff, | ) ) ) | **NO. 4:20-40004-TSH** |
| v. | ) ) | |
| **CITY OF WORCESTER and MICHAEL A. MCKIERNAN,** | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER AND MEMORANDUM ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Docket No. 40) and DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Docket No. 46)**

**June 2, 2022**

**HILLMAN, D.J.**

Plaintiff Carlos A. Alvarez, Jr. commenced this action against defendants City of Worcester (the "City") and Michael A. McKiernan for claims stemming from Alvarez's 2014 arrest and now-vacated 2017 conviction. Alvarez and McKiernan cross-move for summary judgment on Alvarez's claim that McKiernan falsely testified against Alverez to secure his conviction. McKiernan and the City move for summary judgment on Alvarez's remaining claims. For the following reasons, the Court ***denies*** Alvarez's partial motion for summary judgment (Docket No. 40) and ***grants in part*** and ***denies in part*** McKiernan and the City's motion for summary judgment (Docket No. 46).

**Background**

Around 12:15 P.M. on January 12, 2014, McKiernan observed two men interacting in a grocery store parking lot in a high-crime area of Worcester. Suspecting that the men were engaged

in a drug transaction, McKiernan approached them. One of the men was Alvarez, whom McKiernan did not know. McKiernan instructed Alvarez to keep his hands out of his pockets, but Alvarez repeatedly put his left hand into his pocket. The third time Alvarez did so, McKiernan reached for Alvarez's hand. Alvarez pulled away and ran. A couple of blocks over, another officer stopped Alvarez and placed him into custody.

McKiernan, once there, searched Alvarez incident to arrest and recovered a Kyocera Boost flip-style cell phone; he later placed it into a bag. McKiernan also found a $20 bill in Alvarez's left pants pocket and five $20 bills and one $10 bill in Alvarez's right pants pocket. McKiernan testified that he saw something fall from Alvarez's pants; he then noticed a plastic bag containing a small white object, which he believed to be cocaine, on the ground. The object was later analyzed and determined to be 0.13 grams of cocaine.

At the police station, McKiernan wrote an incident report. The report states, "While completing this report at the police station, Alvarez's cell phone rang many times. I did not answer it but I saw a message from 'Anna Fri' pop up on the screen which said 'N**** I need some shit.' This is common language to purchase illegal drugs. I did not access the cell phone and I do not know what the number is."

Alvarez was charged in the Worcester District Court with possession of cocaine with intent to distribute, resisting arrest, and trespassing. The Commonwealth sought to indict Alvarez in Superior Court. Appearing before a grand jury, McKiernan testified that as he was writing his incident report, Alvarez's cell phone "continued to ring," and one of the messages that "popped up on the screen" stated, "N****, I need some shit," which is "a message pretty common to a person who is asking to buy narcotics." The grand jury returned an indictment charging Alvarez

with, *inter alia*, two counts of cocaine distribution, one count of trespassing, and one count of resisting arrest.[1]

Alvarez moved to suppress the Anna Fri text message, arguing that McKiernan had unlawfully searched his phone. At the suppression hearing on March 3, 2016, McKiernan testified that he did not attempt to open or look into the phone, that he saw messages come up while the phone was in his possession, and that he did not have to open the phone in any way to see the messages. McKiernan referred to his incident report several times throughout his testimony. In opposing the motion to suppress, the prosecutor argued that McKiernan "didn't have to open anything, didn't have to turn anything on," and that the text message was in plain view. The motion judge denied the motion, reasoning that "McKiernan did not flip open or answer the phone, he simply observed information on the screen of the lawfully seized phone." On direct appeal from Alvarez's eventual conviction, the Massachusetts Supreme Judicial Court (the "SJC") affirmed the motion judge's decision on the motion to suppress. The SJC reasoned that by "glancing at the ringing cell phone and observing a text message on its outer screen," McKiernan had not conducted a search, and that "[t]here was no evidence that [McKiernan] opened the cell phone, manipulated it to view the text message, or otherwise perused its contents." *Commonwealth v. Alvarez*, 105 N.E.3d 237, 239 (Mass. 2018).

At Alvarez's jury trial on January 9, 2017, McKiernan testified that Alvarez's phone was a "flip phone" and, while gesturing toward the outer screen of the closed phone, that he had read the message from Anna Fri "on the front." He testified that he did not open the phone at any time. He also denied conducing a "search" of the phone, citing the lack of a search warrant to do so. Later, a drug distribution expert testified that people looking to purchase drugs use "coded"

---

[1] Other charges were dismissed by agreement.

language, and that the receipt of coded text messages distinguishes drug users from drug dealers. In his closing statement, the prosecutor argued to the jury that the existence of the Anna Fri text message on Alvarez's phone helped prove that Alvarez had been selling drugs. The jury returned a guilty verdict on the drug distribution and trespassing charges, and the judge sentenced Alvarez to a mandatory minimum term of imprisonment of three-and-a-half years. Alvarez began serving his sentence on January 10, 2017.

In January 2019, Alvarez filed a motion with the Superior Court seeking expert funds in connection with an investigation into a motion for a new trial, alleging that McKiernan's testimony about the Anna Fri text message was false. Alvarez argued that contrary to the implication from McKiernan's testimony, the phone could not display the content of text messages of its outer screen. Examination of the phone by experts and consultation with the phone's manufacture indeed demonstrates that the phone is incapable of displaying the content of a text message on its outer screen while in a closed position. Alvarez and the Commonwealth jointly requested a new trial; thereafter, the Commonwealth filed a nolle prosequi and, on November 19, 2019, released Alvarez from prison.

Alvarez commenced this civil action against McKiernan and the City in January 2020. He alleges that McKiernan is liable under 42 U.S.C. § 1983 for unlawfully searching his phone and presenting false testimony against him, and that McKiernan is liable for common law claims of false arrest and false imprisonment, malicious prosecution, and intentional infliction of emotional distress. Alvarez also alleges that the City is liable under 42 U.S.C. § 1983 for developing or maintaining policies or customs that caused or condoned the unlawful search of his phone and the presentation of fabricated evidence against him.

McKiernan represents that his incident report and application for criminal complaint were "truthful and accurate." He further represents that he "never intentionally testified falsely or inaccurately," and that to the extent his testimony differed from expert analysis on the cell phone, it "may be attributed to a failure in [his] memory." McKiernan maintains that as he was writing his police report, "he saw a message pop up on the screen of Alvarez'[s] cell phone" and "did not press buttons or access the cell phone to see the message." McKiernan also claims that he has "insufficient information to enable him" to determine whether he observed the text message on the outer screen of the phone. McKiernan suggests that the phone may already have been in an open position when the text message came in.

## Discussion

### 1. Unlawful Search and Seizure

Alvarez alleges, under 42 U.S.C. § 1983, that McKiernan violated his constitutional right to be free from unreasonable searches and seizures by searching his phone without a warrant and using the unlawfully obtained evidence to prosecute him. McKiernan argues that summary judgment is appropriate because his search of Alvarez's phone was not unlawful. Viewing the evidence in Alvarez's favor, McKiernan's examination of Alvarez's phone consisted of opening the phone and viewing incoming calls and text messages as they "popped up" onto the screen.[2]

---

[2] In opposition to McKiernan's motion for summary judgment, Alvarez attaches photographs of what Alvarez's counsel avers is the call log from Alvarez's cell phone. The photographs depict the inner screen of a phone and indicate that an outgoing call to voicemail was placed at 1:14 P.M. on January 12, 2014, and that two incoming calls were answered at 1:26 P.M. and 1:27 P.M. the same day. Alvarez argues that because he was arrested shortly after 12:15 P.M., at which point his phone was seized and placed into a bag, the call log supports an inference that McKiernan examined his phone more than merely opening it and viewing incoming calls and text messages. McKiernan argues that the purported photographs of Alvarez's cell phone are inadmissible and should not be considered at the summary judgment stage. Indeed, the photographs are unauthenticated; accordingly, the Court will not consider them. *See G. v. Fay School*, 931 F.3d 1, 14 (1st Cir. 2019).

Opening a flip phone to view the contents of the inner screen of the phone constitutes a search because it exposes to view concealed portions of the phone. *See United States v. Bell*, 2016 WL 1588098, at *3 (C.D. Ill. Apr. 20, 2016); *see also Arizona v. Hicks*, 480 U.S. 321, 325 (1987). Police may not search a cell phone incident to arrest without a warrant. *See Riley v. California*, 573 U.S. 373, 403 (2014). Thus, McKiernan's warrantless search of Alvarez's cell phone was unlawful.

Nonetheless, McKiernan is entitled to qualified immunity. Qualified immunity protects public officials from personal liability for constitutional violations when the constitutional right at issue was not "clearly established" at the time of the violation. *Gilk v. Cunniffe*, 655 F.3d 78, 81 (1st Cir. 2011). At the time of Alvarez's arrest, it was not clearly established that an officer was not allowed to search a cell phone without a warrant incident to arrest. *See United States v. Flores-Lopez*, 670 F.3d 803, 804 (7th Cir. 2012); *United States v. Murphy*, 552 F.3d 405, 411 (4th Cir. 2009); *United States v. Finley*, 477 F.3d 250, 254 (5th Cir. 2007); *Commonwealth v. Phifer*, 979 N.E.2d 210, 214 (Mass. 2012); *but see United States v. Wurie*, 728 F.3d 1, 13 (1st Cir. 2013). Indeed, it was not until six months <u>after</u> Alvarez's arrest that the Supreme Court declared such searches unconstitutional. *See Riley*, 573 U.S. at 403. Accordingly, summary judgment for McKiernan on Alvarez's unconstitutional search and seizure claim is <u>granted</u>.

### 2. *Presentation of False Testimony*

Alvarez alleges, under 42 U.S.C. § 1983, that McKiernan violated his due process rights by using false testimony to prosecute and convict him. Alvarez contends that he is entitled to summary judgment because the evidence demonstrates that McKiernan's testimony (that he read the incriminating text message without opening or accessing the phone) was fabricated to prevent the suppression of the text message and to increase the chances of Alvarez's conviction.

McKiernan asserts that he is entitled to summary judgment because the evidence shows that his incorrect testimony was not deliberately false, but the result of a failure in his memory. Because a genuine dispute of material fact remains, summary judgment is not appropriate for either side.

As the Court concluded in its order on the defendants' motion to dismiss, a plaintiff may bring a 42 U.S.C. § 1983 claim for fabrication of evidence premised on a due process violation. Indeed, "a police officer who fabricates evidence against a criminal defendant to obtain his conviction violates the defendant's constitutional right to due process of law." *Halsey v. Pfeiffer*, 750 F.3d 273, 279 (3d Cir. 2014); *see also Whitlock v. Brueggemann*, 682 F.3d 567, 585 (7th Cir. 2012) (collecting cases); *Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004) ("if any concept is fundamental to our American system of justice, it is that those charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit."). McKiernan's argument that the alleged conduct does not shock the conscience falls flat. To prevail on his claim, Alvarez must prove that McKiernan fabricated evidence, and that there is a "reasonable likelihood" that, without such evidence, he would not have been convicted. *See Halsey*, 750 F.3d at 294.

There is a genuine dispute as to whether McKiernan fabricated evidence. It is undisputed that Alvarez's phone could not display text messages on its front screen. Yet McKiernan repeatedly testified or stated that he did not open or access the phone. In his police report, he stated that he did not "access the cell phone." At the suppression hearing, he testified that he did not attempt to open the phone, and that he did not have to open the phone to see the text messages. And at trial, he testified that he read the text messages "on the front," while holding the phone up in a closed position.

McKiernan may have misremembered how he discovered the text message. Indeed, he points to several parts of his testimony, at the suppression hearing and at trial, where he could not remember certain details regarding the incident and the phone. For instance, at the suppression hearing, McKiernan could not recall Alvarez's exact hand motions at the time of the arrest, and so he had to refer to his police report. On cross-examination at the hearing, moreover, he testified that he did not believe that Alvarez's cell phone was a flip phone, and that he had no independent memory of the phone. At trial, McKiernan testified that he did not remember whether the phone rang at the scene of the arrest. McKiernan's asserted memory failure is more concrete than rank speculation. *See Serra v. Quantum Servicing Corp.*, 747 F.3d 37, 39-40 (1st Cir. 2014) (conclusory allegations are to be disregarded). A jury reasonably could infer from this testimony that McKiernan had forgotten that he had opened the Alvarez's phone.

A jury also reasonably could conclude, however, that McKiernan falsely testified about his discovery of the text message to avoid its suppression at trial. By the time of the suppression hearing, *Riley* firmly established that a warrantless search of a cell phone incident to arrest is unconstitutional. *See* 573 U.S. at 403. Although the search of Alvarez's cell phone occurred prior to *Riley* being decided, *Riley* was applicable to Alvarez's pending case. *See Griffith v. Kentucky*, 479 U.S. 314, 322-23 (1987). Thus, were McKiernan to have admitted that he opened the phone to read the incoming text message, McKiernan would have risked the text message being suppressed. McKiernan argues that the good-faith exception to the exclusionary rule would have applied, *see Herring v. United States*, 555 U.S. 135, 142 (2009), but the government would have borne a "heavy burden" to prove that it did, *see Wurie*, 728 F.3d at 13. Thus, a jury reasonably could find that McKiernan had a reason to lie, such that it is more likely than not that he in fact did lie.

Furthermore, it is reasonably likely that, without evidence of the text message, Alvarez would not have been convicted of cocaine distribution and sentenced to a mandatory minimum term of imprisonment of three-and-a-half years. Both the judge deciding the motion to suppress and the SJC relied on the fact that McKiernan did not flip open the phone in concluding that suppression was not warranted. *See Alvarez*, 105 N.E.3d at 239; *see also Commonwealth v. Sheridan*, 25 N.E.3d 875, 885 (Mass. 2015) (concluding that text messages obtained from a warrantless search incident to arrest pre-*Riley* must be suppressed); *Commonwealth v. Dyette*, 32 N.E.3d 906, 916 (Mass. App. Ct. 2015) (same). And the text message was integral to the prosecution's case. A drug distribution expert testified that the receipt of "coded" text messages distinguished drug users from drug dealers, and during closing, the prosecutor argued that the existence of the text message helped prove that Alvarez was a "seller of drugs."

In sum, a jury reasonably could find for McKiernan, concluding that he misremembered his discovery of the text message and did not deliberately fabricate evidence against Alvarez. Or, a jury reasonably could find for Alvarez, concluding that McKiernan lied about his discovery of the text message to avoid its suppression, which caused Alvarez's conviction for cocaine distribution.[3] Accordingly, summary judgment for both sides on Alvarez's false testimony claim is <u>denied</u>.[4]

---

[3] McKiernan would not be entitled to qualified immunity for fabricating evidence. *See Limone*, 372 F.3d at 45.

[4] A jury reasonably could find that Alvarez's claim is not time barred. A claim under 42 U.S.C. § 1983 generally accrues when the plaintiff knows or has reason to know of the injury on which the claim is based. *See Marrero-Gutierrez v. Molina*, 491 F.3d 1, 5 (1st Cir. 2007). Once the claim accrues, it is subject to a three-year statute of limitations. *See Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001). "Summary Judgment is appropriate with respect to a statute of limitations defense where there is no dispute as to essential evidentiary facts controlling the application of the statute of limitations." *Nunheimer v. Continental Ins. Co.*, 68 F. Supp. 2d 75, 77 (D. Mass. 1999). On McKiernan's motion to dismiss, the Court reasoned that that Alvarez did not have reason to know of his injury until a year after his conviction, when he learned that his

*3. False Arrest and False Imprisonment*

Alvarez alleges a common law claim for false arrest and false imprisonment against McKiernan. To prevail on such a claim, Alvarez must prove that he was unlawfully confined. *See Finamore v. Miglionico*, 15 F.4th 52, 61 (1st Cir. 2021). Where a police officer has legal justification to restrain an individual -- i.e., probable cause to arrest the individual -- the officer is not liable for false arrest or false imprisonment. *See id.* Here, viewing the facts in Alvarez's favor, McKiernan had probable cause to arrest him.

McKiernan arrested Alvarez for, *inter alia*, possession of cocaine with intent to distribute. The elements for the crime of possession with intent to distribute are "(1) knowingly or intentionally possessing the illegal substance (i.e., cocaine), and (2) doing so with the specific intent to distribute." *Commonwealth v. Acosta*, 969 N.E.2d 720, 723 (Mass. App. Ct. 2012). "Proof of possession of a controlled substance may be established by circumstantial evidence, and the inferences that can be drawn therefrom." *Commonwealth v. Brzezinski*, 540 N.E.2d 1325, 1331 (Mass. 1989) (quotations omitted). Likewise, "[i]ntent is a factual matter that may be proved by circumstantial evidence." *Commonwealth v. LaPerle*, 475 N.E.2d 81, 83 (Mass. App. Ct. 1985). "[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual

---

phone could not display text messages on its outer screen. That reasoning still stands when the evidence in the summary judgment record is viewed in Alvarez's favor. McKiernan argues that Alvarez, as the owner of the phone, should have known that it did not display text messages on its outer screen. Maybe so, but McKiernan has offered no evidence or analysis to suggest why Alvarez should have known this, such as evidence indicated how long Alvarez had owned the phone prior to his arrest, or evidence suggesting how Alvarez (or at least others) commonly used the phone. Based on the evidence in the summary judgment record, a jury reasonably could conclude that Alvarez, despite owning the phone, did not know, and should not have known, that the phone's outer screen could not display the contents of text messages. Because a genuine dispute exists as to whether the statute of limitations applies, summary judgment on this ground would be inappropriate.

10

arrested has committed or was committing an offense." *Commonwealth v. Storey*, 391 N.E.2d 898, 904-05 (Mass. 1979).

Here, McKiernan, who had nearly twenty years of experience as a police officer, observed two individuals with whom he was familiar, Jonathan Gomez and Migdalia Suarez, in a high-crime area of Worcester known for frequent drug sales. McKiernan had previously made approximately one hundred arrests in the area. McKiernan observed Gomez talking on his cell phone, make a short trip to and from a nearby convenience store, and then appear to meet with Alvarez, whom McKiernan did not know. McKiernan approached the men; Gomez told McKiernan he was waiting for Suarez, who was shopping, even though McKiernan had just observed Suarez outside by Gomez and Suarez's car. While McKiernan was speaking to Alvarez and Gomez, Alvarez repeatedly put his left hand in his left pocket. Eventually, McKiernan reached for Alvarez's hand, and Alvarez pulled away and ran. Another officer caught up to Alvarez a couple of blocks away. When McKiernan arrived, Alvarez was on the ground and in handcuffs. As the officers moved Alvarez, McKiernan noticed a small, rock-like object on the ground, which McKiernan believed to be consistent with crack cocaine. Alvarez denies that he was in possession of crack cocaine on that day, and the other officer present testified that he did not see any crack cocaine in connection with Alvarez's arrest.[5] In a search of Alvarez's clothing, McKiernan recovered a $20 bill from Alvarez's left pocket, and $110 in cash from his right pocket. McKiernan also located Alvarez's cell phone.

From these facts, a prudent person would be warranted in the belief that Alvarez had committed or was committing the crime of possession of cocaine with intent to distribute.

---

[5] The other officer also testified, however, that McKiernan "took control of the situation. I just placed [Alvarez] under arrest until [McKiernan] showed up."

11

Although Alvarez denies being in possession of cocaine at the time, and the other officer present did not see any cocaine, McKiernan's observation of what he believed to be cocaine is sufficient circumstantial evidence to warrant a reasonable belief that Alvarez possessed cocaine. Alvarez's denial that he possessed cocaine does not create a genuine dispute as to McKiernan's observation, which is what formed the basis for his belief that Alvarez was committing a crime. Furthermore, McKiernan witnessing Gomez, whom he knew, approach Alvarez in an area known for drug dealing, in conjunction with Alvarez repeatedly placing his hand in his left pocket, where McKiernan subsequently uncovered $20 in cash, is sufficient circumstantial evidence from which reasonably to believe that Alvarez was intending to distribute cocaine. Importantly, while "probable cause requires more than mere suspicion, it does not require the same quantum of proof as needed to convict." *Logue v. Dore*, 103 F.3d 1040, 1044 (1st Cir. 1997). No reasonable jury could find McKiernan liable for false arrest or false imprisonment. Accordingly, summary judgment for McKiernan on Alvarez's false arrest and false imprisonment claim is granted.

### 4. *Malicious Prosecution*

Alvarez alleges that McKiernan instituted, with malicious intent, criminal proceedings against him. "To make out a claim for malicious prosecution, a plaintiff must prove: (1) the institution of criminal process against the plaintiff with malice; and (2) without probable cause; and (3) the termination of the criminal proceeding in favor of the plaintiff." *Gutierrez v. Mass. By Transp. Auth.*, 772 N.E.2d 552, 561 (Mass. 2002) (citations and quotations omitted). Malice, defined as "any wrong of unjustifiable motive," may be inferred from a lack of probable cause. *See Campbell v. Casey*, 166 F.Supp.3d 144, 153 (D. Mass. 2016) (quoting *Wilder v. Holden*, 41 Mass. 8, 24 (Mass. 1833)). It follows from the analysis above that because McKiernan had probable cause to arrest Alvarez, McKiernan had probable cause to institute criminal proceedings

against Alvarez. *See Finamore*, 15 F.4th at 61-62. Therefore, summary judgment for McKiernan on Alvarez's malicious prosecution claim is granted.

### 5. *Intentional Infliction of Emotional Distress*

Alvarez alleges that McKiernan is liable for intentional infliction of emotional distress. Such a claim requires a plaintiff to prove: "(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it." *Limone v. United States*, 579 F.3d 79, 94 (1st Cir. 2009) (quoting *Agis v. Howard Johnson Co.*, 355 N.E.2d 315, 318 (Mass. 1976)). McKiernan contends that Alvarez's claim fails as a matter of law because there is no evidence that McKiernan lied about opening Alvarez's phone, because the law at the time of Alverez's arrest permitted a search of Alvarez's phone, and because Alvarez does not set forth any severe emotional harm.

The evidence viewed in Alvarez's favor, however, indicates that McKiernan did lie about opening Alvarez's phone to view incoming calls and text messages. If, as the Court concluded above, a jury reasonably could find that McKiernan lied about opening Alvarez's phone to solidify Alvarez's conviction, a jury reasonably can find that McKiernan either intended to cause or acted recklessly in causing emotional distress to Alvarez, that McKiernan's conduct was extreme and outrageous, and that McKiernan's conduct caused Alvarez's distress. *See Campbell*, 166 F. Supp. 3d at 152. Contrary to McKiernan's assertion, Alvarez also represents that he has experienced anxiety and depression because of McKiernan's actions, that he has experienced humiliation,

embarrassment, and interference with his family relationships, and that he met with a mental health professional while in prison. Accordingly, summary judgment for McKiernan on Alvarez's intentional infliction of emotional distress claim is <u>denied</u>.

### *6. Municipal Liability*

Alvarez alleges, under 41 U.S.C. § 1983, that the City maintained policies or customs that demonstrated an indifference to the constitutional rights of persons in the City, that the polices and customs caused the City to inadequately supervise and train police officers on the constitutional limits on search and seizure, and that the policies and customs condoned the fabrication or the presentation of the false testimony in court.

A municipality is not vicariously liable under 42 U.S.C. § 1983 for the actions of its non-policymaking employees. *See Haley v. City of Boston*, 657 F.3d 39, 51 (1st Cir. 2011). To establish municipal liability, a plaintiff must show that, "through its <u>deliberate</u> conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. Of City Comm'rs of Bryan City v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978). Specifically, a plaintiff must establish (1) that the City had a policy or custom of permitting unconstitutional conduct and (2) that this policy or custom cause his injury. *See Haley*, 657 F.3d at 51.

The City argues that Alvarez's complaints against it are too conclusory to withstand summary judgment. Indeed, the only purported evidence against the City that Alvarez identifies is the City's failure to investigate McKiernan's underlying conduct in this case, and other cases in which the City has failed to disclose publicly information concerning its police. Neither of these asserted facts supports a finding that the City is liable for McKiernan's alleged misconduct or Alvarez's alleged injuries. The case of *Wierstak v. Heffernan*, 789 F.2d 968, 975 (1st Cir. 1986),

on which Alvarez relies, is unavailing; there, the City's failure to investigate the circumstances of the plaintiff's case was but one of many facts permitting a finding of liability. Here, the City's failure to investigate the circumstances of Alvarez's case is the only fact on point. Accordingly, summary judgment for the City on Alvarez's municipal liability claim is granted.

## Conclusion

For the reasons stated, Alvarez's motion for partial summary judgment (Docket No. 40) is *denied*, and the defendants' motion for summary judgment (Docket No. 46) is ***granted in part*** and ***denied in part***.

**SO ORDERED**

/s/ Timothy S. Hillman
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**